## JOSEPH YARBOROUGH V. S. W. TATE.

The right to legal redress for an injury to reputation is not materially different from the right to legal redress for an injury to property ; and where the case is made out by proof, the jury is as much bound to find for the plaintiff, in the one case as in the other.

Where the defendant being excited and angry, had called the plaintiff " a damned old cow-thief," for which the suit was brought, and the jury found for the defendant, and the Court refused to grant a new trial, the judgment was reversed.

It may well be questioned, whether, to charge the jury, even hypothetically, upon such a state of case as the evidence did not present, was not calculated to mislead, and induce them to conclude they were at liberty to find in accordance with the assumed hypothesis, when, in truth, that would be to find manifestly without and against the evidence.

Appeal from Nacogdoches. Suit by the appellant against the appellee, for slander ; words charged, " You are a damned old cow thief." The plaintiff proved that in January, 1853, at the house of a Justice of the Peace, in said county, where more than twenty persons were assembled, the plaintiff being in custody (on what charge did not appear) but being allowed to go at large, the defendant called him, the plaintiff, a damned old cow thief, as alleged in the petition. It was on Court day. The defendant had had a fight same day ; was excited with liquor and appeared to be very angry when he uttered the words charged. The words were uttered in presence of the persons assembled, among whom were the plaintiff's sons. One of the witnesses was of opinion that if there had been no liquor, there would have been no fuss; and the same witness testified that they were all groggy except the plaintiff. Another witness, after corroborating previous testimony, said that he had known the defendant a long time, that he was a quiet, peaceable man, and that his conduct was so different from common that day, that witness certainly thought he "was out of the way."

The defendant introduced no witnesses. The Court charged the jury, that if they were satisfied defendant used said expressions, they should next enquire whether he used them willfully, "that is, did he use the words knowingly and willingly and "earnestly, with the intention of charging the plaintiff with "the crime of cow stealing ; or, did he use said words in jest, "as without meaning, as in ridicule or derision, or in any other "provoking manner, but not with the intention of accusing the "plaintiff with the crime of cow stealing. If he did not use "the words with the intention of imputing to plaintiff the said "crime, you will find for the defendant. But if he did intend "thereby to accuse him of said crime, you will find for plain- "tiff."

Verdict and judgment for the defendant. Motion for new trial overruled.

*Clark & Walker*, for appellant. It is impossible to discover upon what grounds the jury found the very extraordinary verdict presènted ; and upon the record as it stands, we respectfully submit, that the Court erred in not granting a new trial. (Williams v. Barsfield, 9 Yerg. R. 270 ; Thompson v. Child, 6 Miss. R. 62 ; Locky v. Lane, 7 Id. 220 ; Ralhton v. Stanton, 6 Barb. S. C. R. 141.)

The Court erred in the charge to the jury, instructing them that the defendant must have spoken the words really and earnestly to charge the plaintiff with the offence of cow stealing, and further defining to them that to use the words as in jest, as without meaning, as in ridicule or derision, or in any other provoking manner, but not with the intention of accusing, &c., &c., was not within the intent of the law slanderous. (King v. Harvey, 2 B. & C. 258 ; Starkie on Slander, 215 *et passim, ante* and *post.*)

But the finding of the jury, even under this charge, was extraordinary, for the whole testimony places even the malice in fact of the defendant beyond question.

Yarborough v. Tate.

*W. B. Ochiltree,* for appellee. *De minimis non curat lex,* (Alex. Dig. Art. 140,) applies eminently to this case.

The jury found for the defendant, and the Judge refused a new trial. They had all the facts before them. There is no bad feeling shown to have either previously or subsequently existed between the parties.

The whole charge is confined to one isolated expression of doubtful import: "You are a damned old cow thief." Are the words "cow thief" of themselves actionable? unaccompanied with circumstances calculated to direct the minds of the hearers to any particular transaction, or even to general guilt?

The earlier Judges of the English Courts were seriously annoyed with cases like the one at bar. They went a long ways to discourage them. Words were construed in *mitiori sensu,* and though later decisions have, in some measure, overruled that doctrine, it was not until after the evil had been corrected. (Wendell's Preface to Starkie on Slander.)

The learned counsel complains of the charge of the Judge below. This complaint is made here for the first time; there was no exception taken to the charge below, or special charge asked by plaintiff's counsel. But the charge of the Court clearly expresses the law. If any charge can be brought against it, it is that it is too stringent against the defendant.

There were no special damages averred or proved by the plaintiff. It was peculiarly the province of the jury to take the question of damages into their own keeping. The Courts, in this class of cases will not interfere either to enlarge or curb their discretion. It is arbitrary. There are data generally given by which they form a criterion to estimate damages. (1 La. R. 445; Id. 248.)

Our Statutes do not favor this action; it is limited to one year, the shortest period known to the Statute of Limitations. Again, if the party recover less than twenty dollars, he pays his own costs. This does away with the force of the cases quoted to support the right to nominal damages. These authorities proceed upon the idea that nominal damages carry costs.

Although the verdict of the jury may be against the weight of evidence, yet if it be not flagrantly wrong, this Court will not disturb it, in opposition to the judgment of the Court below, who refused a new trial. (Monroe v. Foster, 10 Kerr, R. 256.)

WHEELER, J. It is a general rule, that an action is maintainable in respect of every wrong or privation of a legal right. Every man has a clear and indisputable legal right to be secure, not only in the enjoyment of his life, liberty and property, but also in his reputation and good name ; and for every invasion of this right, he has a legal claim to redress, by a civil action. He has a right to be protected from defamation of his character ; which rests upon as solid a foundation, as his right to be protected in his person and his property. The law enforces this right, by giving a right of action for false and willful communications, made to one's prejudice or damage. It defines what communications shall be regarded as substantively injurious, and therefore actionable, that is, in themselves, giving a right of action, though no special damage or loss can be shown ; and leaves all other cases to the operation of the general principle, that " where a man has a temporal loss or " damage, by the wrong of another, he shall have an action on " the case to be repaired in damages." (Starkie on Slander, 2.)

It is undeniable, that the words charged, and declared on in this case, are actionable. It was proved indisputably, that they were uttered by the defendant, of the plaintiff, publicly, and not only in earnest, but in anger ; constituting, unexplained, *prima facie*, a willful and malicious slander. There was no justification, or attempted justification ; and no proof or offer to prove any matter of defence whatever. The allegations and the proof reciprocally meet and conform to each other, and make out conclusively, and beyond a question, a case of willful, malicious slander ; and yet the jury returned a verdict for the defendant. Will the law permit such a verdict to stand ? Clearly not, if it be a man's legal right to be pro-

tected in his reputation, against those who wantonly assail it. And that it is, no one will question. If the plaintiff had sued for an injury to his property, and had thus clearly established his cause of action, and a jury, notwithstanding, from ignorance, or prejudice and passion, or whim and caprice, or from whatever cause, had returned a verdict for the defendant, surely no Court would have hesitated to set aside their verdict, as against law. And why not in the present case? since the right of property is secured by no higher or more sacred guaranty than the right of personal security; the right to be secure in the enjoyment of a man's reputation and good name? That the words are actionable, imports that they give a right of action; which a jury can no more wrest from a man, by the exercise of an arbitrary power, than they can any other right, however sacred and inviolable it may be esteemed and held by the Constitution and laws. To recognize such a right in juries, would be to concede to them a power above and superior to the law, dispensing with it at their mere will and pleasure. It would be to erect the trial by jury into an absolute despotism over the subjects assigned to it; or at least to concede to juries an arbitrary, irresponsible discretion, which is an attribute of despotism, and can have no place in a government of laws. We recognize no such power in those concerned in the administration of justice. The Constitution knows no such power in the State. Not even does the pardoning power, itself, rest upon any such arrogant assumption. Juries, as well as Courts, are bound by the law, and must yield obedience to it; and whenever they trangress the bounds prescribed, the Courts will not hesitate to treat their findings as nullities, and set them aside. There can be no question, that the jury have found in clear and manifest disregard of the law in this instance; and there is as little, that their verdict cannot be permitted to stand, without involving the denial of a clear legal right. That the plaintiff was entitled to a verdict, upon the evidence, cannot be denied. That was a matter of right and of law, over which the jury had no control. But they had a

discretion in awarding damages, which, unless in case of a manifest abuse of it, the Court would not control. The law upon that subject is too well settled to require discussion here.

It is not to be questioned, at this day, that every man, whatever be his rank or position in society, is entitled to legal redress for the defamation of his character; and every man, whatever be his rank or position, is legally responsible for such defamation, and for the language he utters or publishes injurious to the reputation of another. However difficult the task, the law has undertaken to bridle men's tongues, so that they be restrained from calumny. And it has been observed, (Starkie on Slander, Pre. Dis. 6,) that the experience of all nations, from time of the remotest antiquity, shows the necessity of law, on this subject. It has been said with much truth, that, on the one hand, good character, which it may have taken a lifetime to acquire, is but presumptive evidence of good principles; whilst, on the other, the commission of a single dishonorable or unworthy action is demonstrative of bad ones. Hence it is, that the report of a single act of delinquency, if credit be given to it, is at once fatal to the most exalted reputation. (Id. 18.) By the law of nature and society, a man is justified in repelling attempts at personal violence, by opposing force to force. But injuries to character do not admit of such restraints. In their very nature preventive remedies cannot be applied. The only practicable remedy, which the law can afford, is pecuniary compensation in damages, which may serve to restrain and correct the offender, however inadequate it may be to redress the injury. "Experience (it has been observed) has fully proved, that to refuse, or even to restrict the civil remedy within too narrow limits, is sure to occasion personal conflicts and bloodshed; the ordinary transition is "a verbis ad verbera, men being always apt to carve out their "own remedy in such cases, where it is denied by the law." (Id. 29.) But the reason of the law requires no vindication. It will suffice for us, to "administer the law as we find it."

It is to be observed, in reference to the charge of the Court,

that there was nothing in the evidence which could have warranted the jury in finding that the words were uttered in jest, or in any other sense, or with any other intention, than that which was imputed to their use. And it may well be questioned, whether, to charge the jury, even hypothetically, upon such a state of case as the evidence did not present, was not calculated to mislead, and induce them to conclude they were at liberty to find in accordance with the assumed hypothesis, when in truth that would be to find manifestly without and against the evidence. It is scarcely necessary to say, that the jury were not warranted in drawing inferences as to the intentions of the defendant, or his manner of uttering the slanderous words, or the sense in which they were understood by the hearers, or their effect upon the character of the plaintiff, not warranted by the evidence.

Whether from misconceiving the law, or being mislead by the charge of the Court, or from whatever cause, the verdict of the jury is manifestly against law and the evidence ; and the Court erred in refusing to set aside the verdict and grant a new trial. The judgment must therefore be reversed and the cause remanded for a new trial.

Reversed and remanded.